276 N.J. Super. 319 (1994)
647 A.2d 1364
THERESA DOWER AND SHEILA DOWER, PLAINTIFFS-APPELLANTS,
v.
GREGORY GAMBA, MICHAEL GAMBA, CHRISTOPHER GAMBA, DEAN GAMBA AND MATTHEW KOHAUT, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted September 14, 1994.
Decided October 12, 1994.
*321 Before Judges SHEBELL, WALLACE and KLEINER.
Pitman, Pitman & Mindas, attorneys for appellants (Steven M. Hambro, on the brief).
George T. Szymczak, attorney for respondents (Mr. Szymczak, on the brief).
The opinion of the court was delivered by SHEBELL, P.J.A.D.
In this case of first impression, we are called upon to interpret the meaning of the word "provide" as used in N.J.S.A. 2A:15-5.6b, *322 which sets forth an exclusive avenue for social host liability for personal injury or damage arising from the social host's provision of alcoholic beverages to persons of legal age. Specifically, we are asked to determine whether the statute covers a situation in which the consumption occurs on the host-property, but the alcoholic beverage may not have been directly "served" by the host to the person who consumed it.
Plaintiffs, Theresa Dower and Sheila Dower, who are sisters, filed a complaint in May 1990 against five defendants: Matthew Kohaut, the adult driver of a car in which plaintiffs were injured, and the four Gamba brothers, Michael, Christopher, Gregory, and Dean, who together allegedly hosted a party at which Kohaut and the then underaged plaintiffs imbibed alcoholic beverages. In September 1990, the action against Kohaut was settled for his policy limits.
In July 1992, the Gambas moved for summary judgment. There was no opposition, and the motion was granted by order of September 28, 1992. Plaintiffs retained new counsel, and were granted an order dated November 9, 1992, vacating the summary judgment.
In January 1993, the Gambas again moved for summary judgment. After several extensions of discovery, the Law Division judge granted summary judgment to defendants. Plaintiffs then moved for reconsideration. Their motion was argued and denied on July 23, 1993, whereupon they filed this appeal.
The facts as presented through discovery and the various motions reflect that on May 31, 1988, at 12:43 a.m., Kohaut was driving with the two plaintiffs as passengers when he hit a tree with his motor vehicle, causing plaintiffs to suffer personal injuries. Kohaut's blood alcohol content was represented as .17.
Kohaut and the plaintiffs had just left a barbecue hosted by the Gamba brothers. The barbecue followed a softball game off defendants' property, at which there had also been drinking.
*323 Twenty to thirty-five persons attended the Gamba party, which began during the afternoon hours of May 30, 1988. Some of those at the party had brought beer from the softball game to the house. However, the plaintiffs maintain that a quantity of ice and beer was present in a kiddie pool on the Gamba property, before anyone from the ballgame arrived at the party. Guests also brought beer and put it in the kiddie pool that was filled with ice, apparently supplied by the Gambas. The beer, which was termed "plentiful," was available to all present including minors. It was "without any control or supervision whatsoever," according to Theresa Dower.
Kohaut arrived around 6 p.m. and brought two six-packs of beer, which he placed in the pool. He remained at the party until midnight. In her certification in opposition to the motion for summary judgment, Theresa Dower stated:
What I am trying to emphasize is that the codefendant Matt Kohaut was drinking heavily and it was obvious to everyone at the party including the Gambas, that he was drunk and in no condition to drive. This should have been readily apparent to Mike Gamba who was present when Matt Kohaut was drinking large quantities of beer shortly before he got in his truck to drive my sister and I home.
She also stated that Mike Gamba was present when Kohaut and others were playing a drinking game. She asserted:
The game was a drinking game wherein one person would make a sign and the next person would have to copy the sign and if you messed up, you drank. Matt Kohaut was drinking constantly and chugging entire cans of beer. He was obviously and visibly intoxicated.
In affidavits, Gregory and Christopher Gamba denied bringing any alcohol to the party. Michael Gamba stated that he bought no alcohol "that night" and that alcohol was already there when he arrived, but he didn't "know who specifically bought the alcohol." He stated that "there was beer in a tub on the deck, people were serving themselves." Dean Gamba denied buying any alcohol "that day." He said that people brought beer back to his home, and "[t]he beer was brought out and put in a tub on the deck." There was no indication that the Gambas personally served Kohaut. Sheila Dower asserted that Christopher Gamba provided "a good amount of the beer as it was his party." She stated that she *324 saw a keg of beer at her employer's pizzeria and was told by him that it was being kept cold for Chris Gamba. Her deposition testimony also asserts that Dean Gamba brought beer to her.
The motion judge dismissed plaintiffs' complaint because they could not show that any of the Gambas actually served beer to Kohaut. Because the beer was simply there for the taking, the judge held there was "no service" under the statute. Plaintiffs urge that such a view is unduly restrictive and not a part of the requirements for liability under the social host statute, and that it was reasonably foreseeable that Kohaut could not drive properly based on his obvious intoxication. Plaintiffs point out that the statute uses the term "provide," not "serve," and assert that this requires a more expansive interpretation of the act imposing liability on a social host.
Social host liability was firmly established by our Supreme Court in the case of Kelly v. Gwinnell, 96 N.J. 538, 548, 476 A.2d 1219 (1984).[1] That liability, however, was expressly restricted to the facts presented. The Kelly court held "only that where a host provides liquor directly to a social guest and continues to do so even beyond the point at which the host knows the guest is intoxicated, and does this knowing that the guest will shortly thereafter be operating a motor vehicle, that host is liable for the foreseeable consequences to third parties that result from the guest's drunken driving. Id. at 559, 476 A.2d 1219. The Supreme Court further stated: "Not only do we limit our holding to the situation in which a host directly serves a guest, but we impose liability solely for injuries resulting from the guest's drunken driving." Ibid.
In 1987, our Legislature codified social host liability in N.J.S.A. 2A:15-5.5 to -5.8. N.J.S.A. 2A:15-5.6b sets forth the exclusive method by which social host liability for the negligent operation of *325 a vehicle by an obviously intoxicated guest may be found. N.J.S.A. 2A:15-5.6a. The statute declares:
A person who sustains bodily injury or injury to real or personal property as a result of the negligent provision of alcoholic beverages by a social host to a person who has attained the legal age to purchase and consume alcoholic beverages may recover damages from a social host only if:
(1) The social host willfully and knowingly provided alcoholic beverages either:
(a) To a person who was visibly intoxicated in the social host's presence; or
(b) To a person who was visibly intoxicated under circumstances manifesting reckless disregard of the consequences as affecting the life or property of another; and
(2) The social host provided alcoholic beverages to the visibly intoxicated person under circumstances which created an unreasonable risk of foreseeable harm to the life or property of another, and the social host failed to exercise reasonable care and diligence to avoid the foreseeable risk; and
(3) The injury arose out of an accident caused by the negligent operation of a vehicle by the visibly intoxicated person who was provided alcoholic beverages by a social host.
[N.J.S.A. 2A:15-5.6b (emphasis added).]
The social host issue was studied by the New Jersey Commission on Alcoholic Beverage Liability, whose final report established the basic parameters of the statute as enacted. The Commission defined its task as the study of "the duties, responsibility and liability of private hosts with regard to the serving of alcoholic beverages to guests." New Jersey Commission on Alcoholic Beverage Liability, Final Report, at 1 (1985). The Senate Committee reporting the bill also stated: "It was the intention of the commission as expressed in its final report to establish for social hosts who serve alcoholic beverages a clear, statutory standard of liability that cannot be expanded or limited except by the Legislature itself." Senate Law, Public Safety & Defense Committee, Statement to Senate Committee Substitute for Senate Bill Nos. 1152 and 545  L. 1987, c. 404 (March 6, 1986).
It is interesting, but perhaps not overly significant, that the statutory language used to establish the requirements for social host liability omits use of the words "service" or "server," although those words are used to establish the liability of a commercial purveyor under N.J.S.A. 2A:22A-5b. There is no doubt that *326 whether we are considering commercial servers or social hosts either might make alcohol available on their premises in a variety of ways other than directly handing the guest a drink. Since the Legislature intended to be stricter in the imposition of liability on commercial purveyors than on social hosts, Cardinale, Statement to Senate Bill No. 2122 and No. 545  L. 1987, c. 404 at 3 (Sept. 13, 1984), we have no doubt that a commercial server who provides alcohol to a customer by a means other than direct service may nonetheless be liable under N.J.S.A. 2A:22A-5b, notwithstanding the use of the term "serve" in the statute. Although the word "provide" can be more easily seen to encompass those situations where the social host indirectly dispenses or furnishes the alcoholic beverage, the word "serve," as noted, can also be interpreted to refer to the situation where the commercial purveyor makes available the alcoholic beverage without directly waiting on the customers. Similarly, if one asks colloquially: "Was alcohol served at the party?"; it does not prevent an affirmative response because the host had the guests serve themselves.
So much for statutory construction, as the question is not one of linguistics. Rather, it is one of deciding what the Legislature intended by the enactment. In this regard, the Governor noted that the Legislature not only intended to establish limits on the liability of social hosts, but that "[t]he bill also sets forth the conduct expected of social hosts, and the legal principles that shall be applied in lawsuits involving the provision of alcoholic beverages by social hosts." Governor's Reconsideration and Recommendation Statement to the Senate (emphasis added).
A better perspective on the standard of "conduct expected of social hosts" can be obtained after looking at the comment of the motion judge during oral argument. His statement clearly reveals the likely consequence of the ruling under attack by plaintiffs.
THE COURT: And you have to show that one of the owners or one of the members of the family actually served the plaintiff when the plaintiff was visibly intoxicated. Is that right?
[PLAINTIFF'S COUNSEL]: When you say actually serve, you're talking about handing it to them?

*327 THE COURT: Yeah. Yeah.
[PLAINTIFF'S COUNSEL]: I don't think that 
THE COURT: I think the way out of the social guest problem is that they put the booze on a table and everybody goes to the booze. I think that that, although I'm sure that social policy might frown up on it, but my concern is that the basic societal instinct is to preserve one's home. And this way, think it jeopardizes home ownership. If the beer is on the table, there is no service as far as I'm concerned.
This court will not accept an interpretation of New Jersey's Social Host Liability Act that so drastically diminishes the important goal of the Legislature when it established the conduct expected of social hosts. Our Supreme Court in Kelly v. Gwinnell, supra, noted "the devastating consequences of drunken driving" and found the concerns of those who might be required to pay a greater insurance premium because of the imposition of a higher standard to be "minor," compared to the losses suffered by society as a result of drunken driving. 96 N.J. at 557, 476 A.2d 1219. The proposition that the Legislature intended that a social host may escape responsibility for the negligent provision of alcoholic beverages to an obviously intoxicated person merely by "placing the booze on a table" and walking away clearly contravenes the duty carefully spelled out in the statute. N.J.S.A. 2A:15-5.6b.
The focus of N.J.S.A. 2A:15-5.6b is not on the means used to provide the alcoholic beverage to the potential operator of a vehicle. Both the duty and limitation spelled out in the statute deal with knowingly making alcohol available to a person who was visibly intoxicated either "in the social host's presence" or "under circumstances manifesting reckless disregard of the consequences as affecting the life or property of another." N.J.S.A. 2A:15-5.6b(1)(a) and (b). The Legislature further intensified the test of liability by adding the requirement that it be proved that "the social host failed to exercise reasonable care and diligence to avoid the foreseeable risk." N.J.S.A. 2A:15-5.6b(2). We, therefore, conclude that unlike the restriction imposed in Kelly v. Gwinnell, supra, the Legislature did not require that a plaintiff show that the social host directly served the visibly intoxicated driver who negligently injures another.
*328 We find in these circumstances that a factual issue exists, sufficient to withstand summary judgment, as to whether the Gambas willfully and knowingly provided alcoholic beverages to Kohaut, while he was visibly intoxicated, under circumstances which created an unreasonable risk of foreseeable harm to the life or property of another. N.J.S.A. 2A:15-5.6.
Plaintiffs also argue that summary judgment was not warranted as to the allegations of Count Three of their complaint that the Gambas allowed them to drink alcoholic beverages although plaintiffs were underage at the time. Such liability is not circumscribed by the social host statute. This court has said that the principles of liability for permitting minors to obtain alcoholic beverages is subject to common-law development by the courts. Morella v. Machu, 235 N.J. Super. 604, 609-610, 563 A.2d 881 (App.Div. 1989) (absent parents may be held liable for service of alcohol to minors by teenaged hosts where intoxicated minor negligently thereafter operates motor vehicle); see Finney v. Ren-Bar, Inc., 229 N.J. Super. 295, 551 A.2d 535 (App.Div. 1988) (intoxicated minor allegedly served by defendant thereafter carelessly starts house fire); Linn v. Rand, 140 N.J. Super. 212, 356 A.2d 15 (App.Div. 1976) (social host may be liable for injuries inflicted by negligent driving of obviously intoxicated social guest minor served by host).
While serving alcohol to a minor may provide a basis for establishing negligence, that negligence must nonetheless be a proximate cause of the injuries sustained. Schomp v. Wilkens, 206 N.J. Super. 95, 102, 501 A.2d 1036 (App.Div. 1985). Although proximate cause is traditionally a jury question, Martin v. Bengue, Inc., 25 N.J. 359, 374, 136 A.2d 626 (1957), plaintiffs have failed to make any showing that their decision to enter Kohaut's vehicle was affected by their drinking. The record demonstrates no material issues of fact on this issue. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 73-75, 110 A.2d 24 (1954). Plaintiffs have failed to make a showing that alcohol impaired *329 their judgment to the extent that either one of them rode with Kohaut when she would not have otherwise done so.
Reversed and remanded as to defendants' liability under N.J.S.A. 2A:15-5.8. Affirmed as to the dismissal of Count Three.
NOTES
[1] See Figuly v. Knoll, 185 N.J. Super. 477, 449 A.2d 564 (Law Div. 1982) (earlier trial court ruling allowing action against social host).